## IN THE UNITED STATES DISTRICT COU/RT
## FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| **U.S. Commodity Futures Trading Commission,** | ) ) ) |
| **Plaintiff,** | ) **Case No. 1:12-cv-01932-JLK** ) ) |
| **v.** | ) ) |
| **Michael Gale, individually and d/b/a Capital Management Group** | ) ) ) |
| **Defendant.** | ) ) ) |

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT MICHAEL GALE, INDIVIDUALLY AND D/B/A CAPITAL MANAGEMENT GROUP

## I. INTRODUCTION

On July 25, 2012, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Michael Gale ("Gale"), individually and doing business as Capital Management Group ("CMG") (collectively, "Defendant"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006 and Supp. 2009), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§1.1 *et seq.* (2012).  (Doc. 1.)  The Court entered, among other things, an *ex parte* statutory restraining order against Defendant on July 25, 2012 (Doc. 11 ), an Amended Statutory Restraining Order on August 1, 2012 (Doc. 13 ), and a Consent Order for Preliminary Injunction and Other Ancillary

Relief Against Defendant ("PI Order") on August 14, 2012.  (Doc. 20.)  The PI Order froze

assets under Defendant's control, prohibited further violations of the Act, as amended, 7 U.S.C.

§§ 1 *et seq*., and the Regulations, 17 C.F.R. §§ 1.1 *et seq*., ordered an accounting of assets,

permitted CFTC access to all of Defendant's books and records, and prohibited the destruction of

documents.

The parties have agreed to the entry of this Consent Order for Permanent Injunction,

Civil Monetary Penalty and Other Equitable Relief ("Consent Order"), which will resolve the

CFTC's enforcement action.

## II.  CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Gale,

individually and d/b/a CMG, without a trial on the merits or any further judicial proceedings,

Defendant Gale:

1.　　Consents to the entry of this Consent Order for Permanent Injunction, Civil

Monetary Penalty and Other Equitable Relief Against Defendant Michael Gale;

2.　　Affirms that he has read and agreed to this Consent Order voluntarily, and that no

promise, other than as specifically contained herein, or threat, has been made by the Commission

or any member, officer, agent or representative thereof, or by any other person, to induce consent

to this Consent Order;

3.　　Acknowledges service of the summons and Complaint;

4.　　Admits the jurisdiction of this Court over him and the subject matter of this action

pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5.　　Admits the jurisdiction of the Commission over the conduct and transactions at

issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

2

6.      Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7.      Waives:

(a)  any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq*. (2012), relating to, or arising from, this action;

(b)  any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)  any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)  any and all rights of appeal from this action;

8.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

9.      Agrees that he will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.     Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendant shall undertake all steps necessary to ensure that all of his agents and/ or employees under his  authority or control understand and comply with this agreement; and

11.     By consenting to the entry of this Consent Order, neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which he admits.  Further, Defendant agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant; (b) any proceeding pursuant to Section 8a of the Act, as amended, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2012); and/or (c) any proceeding to enforce the terms of this Consent Order.

12.     Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 62 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States, and

13.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

## III.  FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.  Findings of Fact**

**1.  The Parties To This Consent Order**

14.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

15.     Defendant Michael Gale, individually and doing business as Capital Management Group, is sixty-four years old and resides in Littleton, Colorado.  Gale has acted as a commodity pool operator ("CPO") by soliciting, accepting, and pooling participant funds for the purpose of trading them in commodity futures in accounts held in his and his wife's names.  Gale has never been registered with the Commission in any capacity.  Gale did business as CMG when soliciting and receiving commodity pool ("Pool") participants' funds.  CMG has never been registered with the Commission in any capacity and has never filed for incorporation, or registered as a limited liability company, sole proprietorship, or otherwise with any state.

### 2.  Gale's Commodity Futures Trading Accounts

16.     Gale maintained and controlled two futures trading accounts carried at registered futures commission merchants ("FCMs") during portions of the relevant time.  He maintained one as a joint futures trading account in his and his wife's names at FCM A, account XXX81, and another at FCM B, account XXX29, also in his and his wife's names.

17.     Gale opened account XXX81 on or about May 13, 2009, and represented in opening account documents that the funds on deposit with FCM A were proprietary and did not represent the interests of any pools, third party individuals, or companies.  Gale further represented that he did not hold himself out as engaging in the business of investing capital contributions from other participants in the commodity futures markets.

18.     On approximately June 3, 2009, Gale funded account XXX81 with a $100,000 wire transfer from one of Gale's accounts at Bank A.  When FCM A questioned Gale about the source of the funds in his trading account, Gale responded that the funds originated from the sale of an investment property.  Gale did not make any subsequent deposits into that trading account.

19.     Between June 3, 2009 and May 20, 2010 Gale suffered net losses of approximately $6,798 trading e-minis in account XXX81 at FCM A.  Account XXX81 only netted profits in two months during the life of the account; $108.40 in August 2009 and $169.80 in May 2010.  Gale also withdrew approximately $92,992 from that account between June 3, 2009 and April 27, 2012.  The account was dormant after May 20, 2010, until the remaining balance of $491.80 was wired to Gale's account at Credit Union A on April 27, 2012.

20.     Gale opened account XXX29 at FCM B on approximately November 10, 2009, and he represented in opening account documents that the funds in the account were proprietary and that the account did not contain any third party customer funds.

21.     Between November 13, 2009 and September 15, 2011, Gale deposited $170,000 into account XXX29.  From November 13, 2009 through July 31, 2012, Gale suffered net losses of approximately $56,226 trading e-minis and NY LT Crude futures contracts.  Gale also withdrew approximately $112,000 from account XXX29 during that time period.  Account XXX29 netted profits in six months during the life of the account ranging from $16.18 to $7,737.10.  Gale has not placed any trades in account XXX29 since approximately July 24, 2012 and the account has maintained a balance of $1,294.13 since July 31, 2012.

**3.  Solicitation Fraud**

22.     During the relevant time, Gale acted as a CPO by soliciting and accepting at least $891,526 from at least nine participants for the purpose of trading futures contracts in a pooled account at FCM A.

23.     On multiple occasions when soliciting and accepting funds, Gale falsely represented to actual and prospective Pool participants that his personal trading and his trading for the Pool was profitable and that their funds would be used to trade e-minis in the Pool.  Gale knew that these representations were false and/or recklessly disregarded the truth while making them.

24.     For example, between summer 2007 and April 2009, Gale solicited funds for the Pool from two prospective participants by representing that he "specialized" in trading e-minis and that he had been successful trading commodity futures for his personal account and for others.  He told one prospective Pool participant that "[n]ormal proceeds over the last 5 years is about $2,000,000.00 on a 2,000,000.00 basis, or about a 100% ROI after expenses and my fee is deducted."  Gale also told that prospective Pool participant that the "fee for trading the account is 20% of the profits of the previous months earnings after trading commissions are taken out."  He further confirmed that the only fees charged to the Pool included the cost of a charting package,

exchange access fees, a subscription fee related to trading education, wire transfer fees, postage, and the cost of a new laptop computer when necessary.

25.     Gale also misrepresented the risks associated with commodity futures trading.  In an attempt to persuade another Pool participant to increase her investment, Gale promised a "net 20% return" and guaranteed that she could not "receive less than the initial investment."  Gale also told that Pool participant that her investment was secured by his life insurance policy and he gave her a copy of a "Codicil to amend life insurance from designated beneficiaries to the estate of Michael B. Gale," to that effect.  The insurance company has no record of any such Codicil.

26.     To further perpetuate his fraud and induce actual and prospective Pool participants to invest money and/or remain in the Pool, Gale prepared and delivered false tax records for 2006, 2007, and 2008.  Specifically, in approximately April 2009, Gale faxed at least one prospective Pool participant fictitious Form 1099-Bs from 2006 through 2008, all of which purportedly reflected profits exceeding $2.4 million in FCM A account XX96 in the name of Michael Gale DBA Capital Management Group.  In fact, FCM A carries account XX96 in the name of one of Gale's sons; it was not opened until February 2007, and the account suffered losses in both 2007 and 2008.

27.     In approximately October 2009, Gale sent two fictitious 1099-Bs for 2008 to at least one other Pool participant in response to that Pool participant's and her husband's concerns about the Pool and in an attempt to persuade her to increase her investment in the Pool. Specifically, Gale sent that Pool participant the same false Form 1099-B for 2008 for account XX96 referenced above, along with a second fictitious Form 1099-B for 2008, which purportedly reflected profits exceeding $200,000 for FCM A account XX23 in the name of Michael Gale.  In fact, FCM A carries account XX23 in the name of an unrelated individual.

Gale does not own or control the account in any way, and that account lost $1,510 in 2008. Nonetheless, Gale represented to that Pool participant that the Form 1099-Bs showed trading profits from his personal account and an account that he traded as a business.

28.    On approximately August 31, 2009, less than two months before Gale sent at least one Pool participant the false Form 1099-Bs from 2008 and represented that he made "almost 3 million dollars last year[,]" he filed for bankruptcy protection in the United States Bankruptcy Court for the District of Colorado (Case 1:09-BK-28171).  In his voluntary petition for Chapter 7 bankruptcy protection, Gale represented that he had no gross income in 2007 and 2008 and that he earned only $32 in stock dividends in 2008.

**4.    Defendant's False Account Statements and Reports to Pool Participants**

29.    During the relevant period, Gale faxed or emailed at least one Pool participant a fictitious trading account statement that misrepresented the value of the Pool.  For example, in approximately April 2009, Gale faxed a Pool participant one page of a "brokerage statement," purportedly from FCM A, which reflects a balance in the trading account exceeding $3.5 million. He represented to that Pool participant that the balance shown on the account statement reflected the total amount of funds in the Pool.

30.    Gale also provided false reports to at least one Pool participant reflecting positive returns in the Pool.  For example, he wrote to one Pool participant during an online Skype discussion that his share of the Pool netted a profit each month between May and December 2009 ranging from $17,570 to $25,125.  Similarly, between May and September 2010, Gale sent at least eight emails to at least one Pool participant reporting on the Pool's performance from January through July 2010.  The emails noted profits for that Pool participant ranging from $7,850 to $12,225 for each month, and monthly profits ranging from $21,150 to $23,225 for another Pool participant.

### 5.   Defendant Commingled and Misappropriated Pool Participants' Funds

31.     Between approximately April 9, 2009 and June 15, 2010, two Pool participants sent via Federal Express and/or hand delivered four checks made out to Gale for a total of approximately $700,000 for the purpose of trading e-minis.  Gale deposited those Pool participants' funds in one or more bank accounts at Bank A.  He represented to those two Pool participants that their funds would be pooled in FCM A account XX96 for the purpose of trading e-minis.  Gale opened account XX96 in his son's name, and Gale represented in account opening documents that only his son owned, controlled, and had authority to trade in that account. Statements for account XX96 only show deposits of $29,870 from an account in Gale's son's name at Bank B on or before February 25, 2009.

32.     Another Pool participant sent Gale at least three checks made out to him for a total of approximately $30,000 between February 9, 2008 and October 16, 2008.  He told that Pool participant that her funds would be pooled in FCM A account XXX81.  However, Gale deposited that Pool participant's funds in one or more bank accounts in his name and did not open FCM A account XXX81 until the next year, on approximately May 13, 2009.

33.     Gale made payments to at least six Pool participants totaling at least $437,577.35 between approximately August 30, 2008 and February 13, 2012, which he represented as reflecting profits.

34.     Gale misappropriated a substantial portion of Pool participants' funds since at least February 9, 2008.  Gale used some Pool participants' funds for personal and/or business expenses and to pay other Pool participants in the manner of a Ponzi scheme.  He never disclosed to Pool participants that their funds would be, or had been, used for these purposes.

35.     Gale failed to operate the Pool as a separate legal entity and accepted monies from Pool participants for the purchase of interests in the Pool made payable to him.  While acting as a

CPO, Gale commingled funds received from Pool participants by depositing such monies into bank and trading accounts containing his and/or his wife's personal funds, as well as funds of others received by him.

36.     Although required to be registered, Defendant was not registered with the Commission in any capacity during the relevant time.

37.     Gale engaged in the acts and practices described above in Paragraphs 16 through 36 knowingly or with reckless disregard for the truth.

**B.  Conclusions of Law**

**1.  Jurisdiction and Venue**

38.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

39.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e), because the Defendant resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**2.  Commodity Futures Fraud**

40.     By the conduct described in paragraphs 16 through 37 above, Defendant cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, Pool participants by, among other things,  knowingly or recklessly: i) misrepresenting to actual and prospective Pool participants the value of the Pool, that the Pool was profitable, and

that he was a successful commodity futures trader; ii) failing to disclose trading losses and failing to inform participants that he filed for Bankruptcy protection; iii) misrepresenting that commodity trading accounts were opened and funded for the Pool's customers and that commodity trades were placed for their accounts, when in fact, no accounts in the name of the Pool were opened; iv) misappropriating a portion of Pool participants' funds; and v) making or causing to be made false statements, tax records, and/or reports to actual and prospective Pool participants while acting as a CPO, in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i), (iii), with respect to acts occurring before June 18, 2008, and in violation of Section 4b(a)(1)(A) and (C) of the Act as amended, to be codified at 7 U.S.C. § 6b(a)(1)(A), (C), with respect to acts occurring on or after June 18, 2008.

41.     By the conduct described in paragraphs 29 through 30 above, Defendant willfully made or caused to be made false reports or statements to the Pool participants, including by sending at least one Pool participant a fictitious trading account statement misrepresenting the value of the Pool and providing false reports to at least one Pool participant reflecting positive returns in the Pool, in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii), with respect to acts occurring before June 18, 2008, and in violation of Section 4b(a)(1)(B) of the Act as amended, to be codified at 7 U.S.C. § 6b(a)(1)(B), with respect to acts occurring on or after June 18, 2008 .

### 3.  Fraud by a CPO

42.     By the conduct described in paragraphs 16 through 37 above, Defendant, while acting as a CPO, directly or indirectly employed a device, scheme, or artifice to defraud Pool participants and engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon Pool participants through use of the mails or other means of instrumentalities by, among other things: i) misrepresenting to actual and prospective Pool

12

participants the value of the Pool, that the Pool was profitable, and that he was a successful commodity futures trader; ii) failing to disclose trading losses and failing to inform participants that he filed for Bankruptcy protection; iii) misrepresenting that commodity trading accounts were opened and funded for the Pool's customers and that commodity trades were placed for their accounts, when in fact, no accounts in the name of the Pool were opened; iv) misappropriating a portion of Pool participants' funds; and v) making or causing to be made false statements, tax records, and/or reports to actual and prospective Pool participants while acting as a CPO, in violation of Section 4$o$(1)(A) and (B) of the Act, 7 U.S.C. § 6$o$(1)(A) and (B) (2006).

### 4.   Failure to Register as a CPO

43.     By the conduct described in paragraphs 16 through 37 above, Defendant acted as a CPO without the benefit of registration with the Commission as a CPO, and in connection with his CPO businesses, made use of the mails or other means or instrumentalities of interstate commerce in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

### 5.   Failure to Operate Pool as a Separate Legal Entity, Accepting Funds in His Own Name, and Commingling Pool Funds

44.     By the conduct described in paragraphs 16 through 37 above, Defendant, while acting as a CPO, failed to operate the Pool as a legal entity separate from that of the CPO and accepted monies from Pool participants for the purchase of interests in the Pool in his own name, in violation of Regulation 4.20(a)-(b), 17 C.F.R. § 4.20(a)-(b) (2012).

45.      By the conduct described in paragraphs 16 through 37 above, Defendant, while acting as a CPO, commingled funds he received from Pool participants by depositing such funds into bank and trading accounts containing his and/or his wife's personal funds as well as funds of others received by Defendant, in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2012).

46.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.  PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

47.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, Defendant is permanently restrained, enjoined and prohibited from directly or indirectly:

a. Cheating or defrauding, or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons by making false, deceptive or misleading representations of material facts, by failing to disclose material facts, or by misappropriating customer funds in or in connection with orders to make, or the making of contracts or sale of commodities for future delivery, made or to be made for or on behalf of any other person, in violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C);

b. Willfully making false reports or statements or causing false reports or statements to be made to other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person, in violation of Section 4b(a)(1)(B) of the Act,  7 U.S.C. § 6b(a)(1)(B);

c. Employing a device, scheme, or artifice to defraud any client or participant or prospective client or participant, or  engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon anyone through use of the mails or other means of instrumentalities of interstate commerce, in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B);

d. Making use of the mails or any means or instrumentalities of interstate commerce while acting as a CPO without the benefit of registration with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006); and

e. While acting as a CPO, failing to operate a pool as a legal entity separate from that of the CPO, accepting monies from pool participants for the purchase of interests in a pool in his own name, and commingling pool participant funds with his own funds, in violation of Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2012).

48.   Defendant is also permanently restrained, enjoined and prohibited from directly or indirectly:

    a.   Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

    b.   Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), and/or swaps (as that term is defined in Section 1a(47) of the Act, as amended, and as further defined by Commission regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), for his own personal account or for any account in which he has a direct or indirect interest;

    c.   Having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps traded on his behalf;

    d.   Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps;

    e.   Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps;

    f.   Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and/or

    g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

## V.  RESTITUTION AND CIVIL MONETARY PENALTY

### A.  Restitution

49.     Defendant shall pay restitution in the amount of four hundred and seventy-nine thousand, four hundred and two dollars and thirty five cents ($479,402.35) ("Restitution Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

50.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendant's pool participants, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall collect restitution payments from Defendant and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

51.     Defendant shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "Defendant Gale – Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

52.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendant's pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V.B, Paragraph 59, below.

53.     Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant's pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendant shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

54.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendant's pool participants during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

55.     The amounts payable to each Participant shall not limit the ability of any Participant from proving that a greater amount is owed from Defendant or any other person or

entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Participant that exist under state or common law.

56.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Participant of Defendant who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant to ensure continued compliance with any provision of this Consent Order and to hold Defendant in contempt for any violations of any provision of this Consent Order.

57.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

58.     Defendant shall pay a civil monetary penalty in the amount of seven hundred and fifty thousand dollars ($750,000) ("CMP Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

59.     Defendant shall pay his CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables – AMZ 340
> E-mail Box: 9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendant shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C. Provisions Related to Monetary Sanctions**

60. Partial Satisfaction: Any acceptance by the Commission or the Monitor of partial payment of Defendant's Restitution Obligation or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**D. Cooperation**

61. Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

## VI.  MISCELLANEOUS PROVISIONS

62.     Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Rosemary Hollinger
> Associate Director
> CFTC Division of Enforcement
> 525 West Monroe, Suite 1100
> Chicago, Illinois 60661

Notice to Defendant Michael Gale, individually and d/b/a Capital Management Group:

> Michael Gale
> 6771 S. Kendall Blvd.
> Littleton, Colorado 80128

All such notices to the Commission shall reference the name and docket number of this action.

63.     Change of Address/Phone:  Until such time as Defendant satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

64.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

65.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

66.     Waiver:  The failure of any party to this Consent Order or of any Participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or Participant at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

67.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

68.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

69.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

70.     Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Michael Gale Individually and D/B/A Capital Management Group.*

**IT IS SO ORDERED** on this 25th day of _June, 2013.


_s/John L. Kane_____
**UNITED STATES DISTRICT JUDGE**


CONSENTED TO AND APPROVED BY:


/s/_____     /**s/**_____
Michael Gale, individually and d/b/a Capital     Allison Passman/Trial Attorney
Management Group     Commodity Futures Trading Commission
6771 S. Kendall Blvd.     525 West Monroe, Suite 1100
Littleton, Colorado 80128     Chicago, Illinois 60661
     312-596-0704
Date: _____3/8/13_____     312-596-0714 (facsimile)
     apassman@cftc.gov


     Dated _____6/20/13_____